# EXHIBIT 1
# PART 3

RUN DATE: 07/08/03                    Russell Med Center Laboratory **LIVE**                    PAGE 1
RUN TIME: 1441                                    Doctor Report
RUN USER: RAD.LIG

| PATIENT: BAILEY,LEMUEL A. | ACCT #: V010110328 | LOC: MEDSURG | U #: M0026668 |
| REG DR: Law,Vincent | AGE/SX: 84/M | ROOM: 270 | REG: 06/30/03 |
| | DOB:      /19 | BED: A | DIS: |
| | STATUS: ADM IN | TLOC: | |

Specimen: CY03-2327              Received:  07/08/03-0838              Status:  SOUT

**SPECIMEN**

PLEURAL FLUID

**CYTOLOGY RESULTS**

ENTERED BY: STEPHENS, CHRISTINA CT(ASCP)

ADEQUACY OF THE SPECIMEN:Satisfactory for evaluation

RESULT:NEGATIVE FOR MALIGNANCY

COMMENT:DEGENERATE MESOTHELIAL CELLS AND GROUPS OF MESOTHELIAL
        CELLS

Signed <SIGNATURE ON FILE>                              ELGIN,JOHN N. MD 07/08/03



** END OF REPORT **

DEFENDANT'S
EXHIBIT
3
PENGAD 800-631-6989

Bailey/Miltope
SR #00560

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

```
Name: BAILEY, LEMUEL A
Phys: Law,Vincent
DOB:      /1919 Age: 85      Sex: M
Acct: VOL.224185 Loc: RAD
Exam Date: 11/01/2004 Status: REG CLI
Radiology No: 00010419
Unit No: M0026668
```

Law,Vincent
1120 AIRPORT DRIVE
SUITE 102
ALEXANDER CITY
AL
35010

| EXAM# | TYPE/EXAM | RESULT |
|---|---|---|
| 000509528 | CT/CT CHEST W/O CONTRAST | |

BAILEY, LEMUEL A.
HISTORY: Left lung nodule.
*UNENHANCED CT SCAN OF THE CHEST*
The study is compared with the last CT from 7/2/03 and the last chest exam from 7/10/03.  There is no definite significant left lung pulmonary nodule demonstrated.  The patient has a few scattered tiny calcified granulomata.  There is emphysema/COPD noted.  Bullous lesions are most prominent in the mid and upper lung zones.  Without contrast, the hilar and mediastinal structures cannot be evaluated well but there is no confirmed significant pathology in the region. There are scattered benign appearing nodes in the mediastinum and no definite hilar lesions are noted.  Atherosclerotic change in the aortic arch.  Thickening of the tissues anterior to the trachea in the upper chest may be associated with a prior sternotomy.  The heart appears probably mildly enlarged.  No malignant bone pathology.
*IMPRESSION:*
1. *No definite significant pulmonary nodule in either lung.*
2. *There are a few scattered tiny calcified granulomata noted, primarily in the right lung.*
3. *There is no other definite significant finding for patient's age. No sign of malignant tumor.*

*notified*
*Glenda w/Faith Hospice*
*11-3-04 — MTaylor lpn*
*+ left messsage for pt*
*Son to call - nt*
*son notified — nt*

PAGE 1                    Law,Vincent                    (CONTINUED)

Bailey/Miltope
SR #00574

**RUSSELL**
**Medical Center**
P.O. Box 939
Alexander City, Alabama 35010

**Transcription Report**

Name: BAILEY,LEMUEL A.
Phys: Law.Vincent
DOB:      ;/1919 Age: 85      Sex: M
Acct: V011224185 Loc: RAD
Exam Date: 11/01/2004 Status: REG CLI
Radiology No: 00010419
Unit No: M0026668

---

| EXAM# | TYPE/EXAM | RESULT |
|-------|-----------|--------|

000509528 CT/CT CHEST W/O CONTRAST
     <Continued>

4.    *The pathology that was felt to be present and resulted in the*
      *opacification in the right lung in July 2003 has resolved.*

           ** REPORT SIGNATURE ON FILE 11/02/2004 **
           Reported By: DONALD G. HAWKINS, MD
           Signed By:   HAWKINS,DONALD MD

CC: Law,Vincent

Technologist: GLENN,DAPHNE RT (R)
Transcribed Date/Time: 11/02/2004 (0635)
Transcriptionist: RAD.RD
Printed Date/Time: 11/02/2004 (1044)

PAGE 2                    Law,Vincent

**Bailey/Miltope**
**SR #00575**

## TEMPLE MEDICAL CLINIC, P.C.
### 1120 AIRPORT DRIVE, SUITE 102
### ALEXANDER CITY, AL 35010
### PHONE:(256)234-4295  FAX:(256)329-1024
## X-RAY REPORT

**DATE OF EXAM: 11-06-03**
**RADIOLOGY#: 2636-03**
**PHYSICAN: DR. LAW**
**PATIENT NAME : LEMUEL BAILEY**
**ADDRESS: 91 SHADY BAY POINT**
**PHONE: 825-9015**
**AGE: 84/M**
**DATE OF BIRTH:**
**DX: CHEST PAIN/ COUGH**
**EXAM: CXR**
**SSN: ‹**
**PRIMARY INSURANCE: MCARMCARE**
**CONTRACT#: 418030991A**
**SUBSCRIBER: SELF**
**2ND INSURACE:**
**CONTRACT# :**
**SUBSCRIBER: SELF**
**RADIOLOGY TECH: Heather Sherrer RT(R)**
**RADIOLOGIST:_____**

## DICTATION:

CHEST:   11/6/03

Comparison is with exam of 6/30/03.
Right lower lobe infiltrate that was present has resolved.  Probable chronic scarring
in both costophrenic angles is very subtly suggested.  COPD.  Heart and hilar
areas are normal in this patient with previous sternotomy.  Two subtle fingerprint
artifacts over the left chest simulate nodules but are due to technical considerations
and not pathology.

IMPRESSION:  COPD.
2.  No other significant finding in this patient with previous sternotomy. No
acute process is suggested.

Dr. Donald G. Hawkins/rh
11/7/03

Bailey/Miltope
SR #00576

RUSSELL MEDICAL CENTER          PATIENT NAME:    BAILEY,LEMUEL A.
ALEXANDER CITY, ALABAMA         ACCOUNT #:       V010110328
                                PHYSICIAN:       Law,Vincent
                                MED. REC. #:     M0026668
                                PATIENT STATUS:  DIS IN

                         DISCHARGE SUMMARY


DATE OF ADMISSION:  06/30/03

DATE OF DISCHARGE:  07/12/03

DISCHARGE DIAGNOSES:
1.    Bilateral pneumonia with right pleural effusion secondary to right middle lobe post obstructive mass most likely carcinoma.

SECONDARY DIAGNOSES:
1.    Alzheimer's dementia.
2.    Hypertension.
3.    Coronary artery disease status post MI/CABG.
4.    Congestive heart failure.
5.    Peripheral vascular disease.
6.    GERD.
7.    Status post small vessel CVA.

CONSULTANTS:
1.    Dr. Stubbs, pulmonology.

PROCEDURES:
1.    CT of the chest without contrast which revealed right lower lobe post obstructive pneumonia with a soft tissue mass in the area of the right bronchus and mildly enlarged mediastinal nodes with noted bilateral pleural effusions, larger on the right, suggestive of bronchogenic carcinoma.
2.    Bronchoscopy which revealed no post obstructive process.

REASON FOR ADMISSION AND HOSPITAL COURSE:
Mr. Bailey is an 84 year old white male with the above mentioned medical problems including tobacco dependency, who presented initially to clinic with a two to three day history of rigors and mild to moderate cough with some associated fever and chills. No nausea, vomiting, diarrhea. On arrival he was noted to be hypoxic with an O2 sat in the 88-91% range and febrile with a temperature of 100.7. Physical exam revealed decreased breath sounds at the right base. Subsequent chest x-ray revealed right lower lobe infiltrate with effusion. He was subsequently admitted, IV fluid hydration, nebulized treatments and IV Zinacef and Zithromax along with supplemental O2. His home medications were restarted. During the initial course of his hospitalization his confusion and agitation worsened, however, this improved gradually. He was seen in consultation with pulmonology for persistent right pleural effusion and after review of the CT of the chest it was felt that he had lung cancer with a post obstructive pneumonia. A diagnostic thoracentesis was undertaken without any complication. However, the cytology was negative for any malignancy. He then underwent a diagnostic and therapeutic bronchoscopy with possible stent placement but bronchoscopy revealed no endobronchial obstructive process up to the fourth order in the right lower lobe where the obstruction was noted, however, the diameter was only approximately 2 mm. The patient was subsequently discharged to Chapman's Nursing Home in stable condition. He has finished a full course of IV Zinacef and Zithromax. His vital signs have been stable. He has been afebrile. His mental status is at his baseline.

Bailey/Miltope
SR #00619

PHYSICIAN COPY                                                        Page 1 of 2

RUSSELL MEDICAL CENTER              PATIENT NAME:    BAILEY,LEMUEL A.
ALEXANDER CITY, ALABAMA             ACCOUNT #:       V010110328
                                    PHYSICIAN:       Law,Vincent
                                    MED. REC. #:     M0026668
                                    PATIENT STATUS:  DIS IN

### DISCHARGE SUMMARY

Discussion was made with his son at length, in regards to his poor overall long term prognosis. He is to be discharged to Chapman's Healthcare for 21 day stay for physical therapy. It also should be noted that he had significant bradycardia into the 30s immediately after his bronchoscopy with some associated nausea. Subsequent EKG revealed sinus rhythm with frequent PVCs, no evidence of acute ischemia or infarction. His heart rate was 71 when the EKG was obtained. The patient's long term prognosis, as mentioned above, is poor. His son wishes for no aggressive measures and this has been discussed on several occasions.

DISCHARGE DIET: Low sodium.

DISCHARGE MEDICATIONS:
1.   2-4 liters per minute of O2 by nasal cannula prn.
2.   Albuterol and Atrovent nebulized treatments q6h.
3.   Adalat CC 90 mg po qd.
4.   Zestoretic 20/25 one po qAM.
5.   Aricept 10 mg one po qPM.
6.   Zantac 150 mg po bid.
7.   Isordil 40 mg po bid.
8.   Aspirin 81 mg po qd.
9.   Tylenol 325 mg two po q4h prn pain.

DISCHARGE INSTRUCTIONS:
1.   Physical therapy, occupational therapy consultation.


                                          Vincent Law, M.D.


VL/ch

cc: Chapman's Nursing Home
D: 07/12/03    0704
T: 07/16/03    1516


Bailey/Miltope
SR #00620

PHYSICIAN COPY                                            Page 2 of 2

If you are authorized to work in this country for a limited period of time, before the expiration of that period you will be required to submit proof of your employment authorization and sign another Form I-9 in order to remain employed by the Company.

Miltope will not discriminate based upon national origin or citizenship.

## WORKING TIME

Normal working hours at Miltope Corporation are 8:00 am to noon and 1:00 pm to 5:00 pm, Monday through Friday, with the exception of the Production staff. Normal working hours for the Production staff are from 7:00 am through 3:30 pm. However, an employee may choose to flex his or her work schedule. Flextime is allowed at the discretion of the supervisor. Most of what we do requires being available to and working with clients and others who also work a standard workday.

Each employee is important to the success of Miltope. It is very important to be available and responsive to those trying to contact us. If it is necessary to leave work for personal reasons, or if you choose to leave because of inclement weather conditions or building utility failure, with supervisor approval, you may be able to work additional hours within the work week or charge the time to vacation. If it is available, you should record a message in voice mail when you are not in the office during normal working hours. Unauthorized absences and chronic absences and tardiness are cause for dismissal. In all cases, time is to be reported on time sheets each day as it is worked for accounting purposes. A normal workweek begins on Monday and ends on Sunday.

Regular time for full-time hourly employees is defined as 8 hours per day for the 5-day week.

Some Operations functions are around the clock and are therefore staffed in shifts that respond to work needs.

Breaks are limited to one 15-minute break in the morning and one 10-minute break in the afternoon. Various recreational and outside activities associated with the company will normally be carried on outside the regular working day.

## ABSENCE/TARDINESS

Getting to work regularly and on time is an essential part of your job and a requirement for continued employment. Any absence or tardiness becomes a part of your performance record at Miltope and your attendance is a factor considered in granting wage increases and promotions.

Reporting to work on time means that you arrive at the facility with sufficient time to be at your assigned work post at the scheduled hour. By the same token, you are not to leave your assigned area except for approved reasons until your scheduled employment day is completed. You should notify your supervisor when you know you may be late for work or absent from work.



DEFENDANT'S
EXHIBIT
4
PENGAD 800-631-6989

3

When illness keeps you at home or when you are absent for some other reason, call your supervisor between 8:00 am and 9:00 am. This notification does not excuse the absence but simply notifies your supervisor that a schedule change may be necessary. If your supervisor is unavailable, you must notify the Human Resources Office. Telephone numbers are as follows:

| Hope Hull | (334) 284-8665 |
| Colorado | (303) 473-0388 |

If you are unable to call, have someone else call for you. Failure to report may result in disciplinary action up to and including termination of employment. If you are absent for three consecutive workdays without providing acceptable notice, you may be considered to have "resigned without notice" and removed from the payroll.

## TIME SHEETS

The time sheet is an essential part of the company's accounting system. It reflects each employee's work and, because of this, each employee is responsible for filling out a time sheet completely and accurately and submitting it through proper channels to the Payroll Department on cutoff day no later than 10:00 am. All time sheets are to be prepared using a PC computer or a ballpoint or ink pen. Time sheets are considered official employment documents and are subject to periodic audit by the Federal and State Governments. Each must be signed by the employee.

Our time charging policy includes the following:

- Time is to be entered daily on the time sheet or in a diary. Do not wait until cutoff to record your time.
- Record hours actually worked each day. Do not try to "equalize" hours during a week or on any other basis.
- Always record hours worked against the Manufacturing Order number for which the work was performed, whether it can be billed or not.

Time recording is also required for the purpose of determining what elapsed labor time has been spent on different jobs. Certain contracts require this information for billing purpose and the cost department requires it for price estimating. Accurate time recording means accurate pricing, correct payroll, and more potential profits for all of us to share.

## ABOUT YOUR PAY

As a Miltope employee, you will receive a check every other Friday for the hours you worked during the previous two-week period, Monday through Sunday.

Every other Friday you will receive a payroll voucher indicating your gross earnings, deductions and net pay, if you have elected direct deposit. Otherwise you will receive a live payroll check. Please note that direct deposit is available and encouraged by all employees. However, it is the employee's choice.

If you should have questions at any time concerning your pay, notify your supervisor immediately. Your supervisor will contact the Payroll Department to see that the matter is resolved.

Bailey v. Miltope Corporation
M#00127



**EMPLOYEE HANDBOOK**

### Eligibility and Length of Vacation

**A.**    Vacation days start to accrue on the first of the month following two (2) full calendar months of employment. These days may be taken when earned or brought forward to the following calendar year.

**B.**    Two Weeks of Vacation Eligibility. Each employee who accrues vacation at the rate of two (2) weeks or eighty (80) hours per calendar year must take such leave in the year following the period earned. If such leave is not taken, it will be forfeited.

**C.**    Three Weeks of Vacation Eligibility. Each employee who accrues vacation at the rate of three (3) weeks or 120 hours per calendar year must take the first and second week of leave in the year following the period earned or it will be forfeited. The third week may be brought forward to the following year.

**D.**    Four Weeks of Vacation Eligibility. Each employee who accrues vacation at the rate of four (4) weeks or 160 hours per calendar year must take the first and second week of leave in the year following the period earned or it will be forfeited. The third and fourth week may be brought forward.

## VACATION PAY

Vacation pay will be computed at the employee's regular base pay.



Vacation pay may be received on the last day worked prior to starting vacation. Requests for advance vacation pay must be received in the Payroll Department at least one week or more prior to the start of vacation. Advance pay is not available for less than one week vacation. There is a four (4) hour minimum for vacation time.

## SICK TIME

While we assume that employees will do everything possible to report to work daily to insure the efficiency of their operation in their department, there are, nonetheless, instances where sickness inhibits the individual's ability to work. On those occasions, you must telephone your supervisor as early as possible and indicate your inability to report to work. As a regular full-time employee, you begin to accrue sick time benefits at the conclusion of two (2) full calendar months of service with the Company.

If you are paid on an hourly basis, you accrue 6.67 hours per calendar month. You will receive pay for any accrued but unused sick leave annually in December, except for three (3) days which will be carried forward. When termination of employment occurs, no payment for accrued but unused sick time will be made.

As a salaried employee, you accrue sick leave at the rate of ten (10) hours per calendar month. Accrued but unused sick time is carried forward to succeeding years as a protection for lost time due to serious illness. When termination of employment occurs, no payment for accrued but unused sick time will be made. There is a two (2) hour minimum for sick time.

The Company reserves the right to require medical substantiation following three (3) days of consecutive absence. After ten (10) consecutive days of absence, you will be required to submit a doctor's statement to your supervisor stating that you are capable of returning to work. Excessive unexcused absence and lateness hinders the effectiveness and ability of your co-

Bailey v. Miltope Corporation
M#00128



workers in your department. Consequently, such behavior will lead to dismissal.

## FAMILY & MEDICAL LEAVE

An employee must be employed for at least twelve (12) months or at least worked 1,250 hours during the previous twelve (12) months.

Covered employees are entitled to take up to twelve (12) weeks of unpaid leave per year for:

- The birth of the employee's child.
- Placement of a child with the employee for Adoption or Foster Care.
- To care for the employee's spouse, child or parent with a serious health condition.
- A serious health condition rendering the employee unable to perform his or her job.

Miltope may require medical certification that the leave is needed due to the employee's own serious health condition or that of a family member.

Miltope will continue the employee's health insurance under the same conditions as if the employee were working. Under this circumstance, the employee will still be required to pay his or her share of the premium.

Any additional information can be obtained by contacting the Human Resources Department.

## LEAVES OF ABSENCE

On occasion, it may be necessary for an employee to request a leave of absence for medical or maternity reasons, for an unforeseen emergency situation, or to comply with local and national government, civic, military or personal activities. Absence of more than ten (10) consecutive days other than those covered by the vacation program must be authorized by a written leave of absence request signed by your supervisor. To qualify for a leave of absence (other than a military leave) you must have completed two (2) full calendar months of employment.

## PERSONAL LEAVE OF ABSENCE

A leave of absence without pay for a reasonable period (generally not to exceed 30 days) may be granted without loss of Company seniority for reasons relating to military service, attendance at school, marriage, serious illness in immediate family or injury. All insurance benefits will continue until the end of the month following the month in which the leave begins. However, no sick days, vacation days or holiday pay will accrue during a leave of absence.

## MEDICAL LEAVE OF ABSENCE

An employee requesting a medical leave of absence is required to submit a statement from his physician indicating the need for such a leave. This statement should be submitted to your supervisor. Medical leave without pay may be granted without loss of Company seniority for periods of time generally not exceeding three (3) months. An employee returning from medical leave is required to submit a statement from their attending physician that they are able to perform their normal duties. If an employee is on a medical leave of absence, the Company

Bailey v. Miltope Corporation
M#00129

I, _____ (Employee Signature), on this day 2 of July 1997 have read the Miltope Employee Handbook and agree to conform to the rules of Miltope Corporation.

23



DEFENDANT'S
EXHIBIT

5

Bailey v. Miltope Corporation
M#00075

# Physician Certification
## for Family or Medical Leave



**MILTOPE**
CORPORATION
3800 Richardson Road South
Hope Hull, Alabama 36043

PLEASE PRINT

Name _____    Title _____

Department _____    Employee Payroll No. _____

Status: ☐ Full Time    ☐ Part Time    ☐ Temporary    Date ___/___/___

---

### To be completed by Human Resources

The above named Employee is requesting family and medical leave from work with his/her employer _____
<span style="font-size:smaller">Name of Employer</span>

It is our understanding that you are currently treating _____
<span style="font-size:smaller">Name of Individual</span>

The Patient is:    ☐ the Employee    ☐ Spouse of the Employee    ☐ Parent of the Employee    ☐ Child of the Employee

☐ The Employee is requesting full day leave from ___/___/___    until ___/___/___

☐ The Employee is requesting leave on an intermittent or reduced schedule on the following dates: _____

☐ Job description (if applicable) is attached.

Please assist us by clarifying the facts about the requested leave by completing the information below.

1.    As a duly authorized medical care provider, I certify that I am currently treating _____
<span style="font-size:smaller">Name of Patient</span>

2.    The Patient has been diagnosed and is receiving treatment for the following condition: _____

3.    The relevant medical facts regarding the Patient's condition include the following: _____

4.    The condition began on ___/___/___

5.    In my opinion, that condition will last until (provide date if possible) _____

6.    As a result of that condition, it is my opinion that:

☐ The Employee is currently unable to perform his/her employment functions set forth on the attached job description.

☐ The Employee is currently needed to care for the Patient.

☐ Intermittent leave is medically necessary for the Employee, or to care for the Patient.

☐ None of the above.

DEFENDANT'S EXHIBIT
PENGAD 800-631-6989

Bailey v. Miltope Corporation
M#00109

# Request for Family or Medical Leave



**MILTOPE**
CORPORATION
3800 Richardson Road South
Hope Hull, Alabama 36043

**PLEASE PRINT**

Request for Family or Medical Leave must be made, if practical, at least 30 days prior to the date the requested leave is to begin.

Name _____    Date ___/___/___

Department _____    Title _____

Status: ☐ Full Time  ☐ Part Time  ☐ Temporary    Employee Payroll No. _____

Hire Date ___/___/___

I request family or medical leave for one or more of the following reasons:

☐ Because of the birth of my child and in order to care for him or her.

    Expected date of birth ___/___/___    Actual date of birth _____

    Leave to start ___/___/___    Expected return date _____

☐ Because of the placement of a child with me for adoption or foster care.

    Date of placement ___/___/___

    Leave to start ___/___/___    Expected return date _____

☐ In order to care for my spouse, child or parent who has a serious health condition*.

    Leave to start ___/___/___    Expected return date _____

☐ For a serious health condition* that makes me unable to perform my job duties.  Describe: _____

_____

    Leave to start ___/___/___    Expected return date _____

    * A physician's certification may be required for leave due to a serious health condition.

☐ For other reasons. Describe: _____

_____

_____

    Leave to start ___/___/___    Expected return date _____

☐ Requested intermittent leave schedule (if applicable; subject to employer's approval) _____

_____

_____

Have you taken a family or medical leave in the past 12 months?    ☐ Yes  ☐ No

If yes, how many workdays?

Bailey v. Miltope Corporation
M#00110

# Employee Acknowledgement

I understand and agree to the following provisions:

- I have worked for my employer, Miltope Corporation, at least one year and at least 1,250 hours in the previous 12 months.

- This leave will be counted against annual FMLA entitlement.

- Medical, life and long-term disability insurance benefits will continue for the duration of family or medical leave of absence. However, no sick and vacation days will accrue and I will not be paid for holidays occurring during such leave.

- If I fail to return to work after the leave for reasons other than the continuation, recurrence or onset of a serious health condition that would entitle me to Medical Leave or other circumstances beyond my control, and if my employer requires it, I will be financially responsible for the medical insurance premiums the company paid while I was on leave.

- This leave will be unpaid, unless it is company policy to be paid; or in the case of my own disability, payment will occur under a company disability insurance plan, if I am so covered.

- I may be required to exhaust my paid vacation, personal or sick leave as part of my 12 weeks of leave.

- To reinstate my employment following a Medical Leave for my own serious health condition, I will provide Miltope with a certification from my health care provider stating that I am able to resume work. I may be denied reinstatement until such fitness report is submitted.

- If I fail to report for work at the end of the leave, for reasons other than the continuation, recurrence or onset of a serious health condition that would entitle me to Medical Leave or other circumstances beyond my control, I shall be considered as having resigned my employment. Engaging in gainful employment during a leave of absence shall be considered as a resignation without notice.

Employee Signature _____    Date _____/_____/_____

## Leave Approval

For full day leave:

Manager/Supervisor Signature _____    Date _____/_____/_____

For intermittent or reduced day leave:

Manager/Supervisor Signature _____    Date _____/_____/_____

Human Resources Signature _____    Date _____/_____/_____

Notes _____

_____

## Payroll Instructions

☐ With pay from _____/_____/_____ to _____/_____/_____

☐ Without pay from _____/_____/_____ to _____/_____/_____

Comments: _____

_____

Notes _____

STATE OF ALABAMA
DEPARTMENT OF INDUSTRIAL RELATIONS
HEARINGS AND APPEALS DIVISION
MONTGOMERY, ALABAMA 36131

(REV. 9/91)

# NOTICE OF UNEMPLOYMENT COMPENSATION HEARING

MILTOPE CORPORATION
C/O PAYROLL DEPT
500 RICHARDSON RD S
HOPE HULL AL                36043-4022

DATE MAILED:    01/26/2004

CLAIMANT: PATRICK A BAILEY          CLAIMANT'S SSN:                   5

EMPLOYER: MILTOPE CORPORATION       APPELLANT:    CLAIMANT

ADM HEARING OFR:  JANIE W. WADE     CASE NO:      18357AT03

HEARING WILL BE HELD ON    FEBRUARY 03, 2004   AT:   12:15 PM CST

LOCATION OF HEARING:   ALABAMA CAREER CENTER
                       260 CHURCH STREET
                       ALEX CITY, AL

**PLEASE READ THE IMPORTANT INFORMATION ON THE BACK OF THIS NOTICE**

ISSUES:

Additional issues may arise during the hearing. The Administrative Hearing Officer is required by rule to consider and decide all issues involved even though the issue may not have been set forth as ground for appeal. Such issues may include availability for work, efforts to find work, circumstances of termination from work, etc..

SECTION 25-4-78(2) AND/OR 25-4-78(3) CODE OF
ALABAMA 1975: WHETHER THE CLAIMANT LEFT THE MOST
RECENT BONA FIDE WORK VOLUNTARILY WITHOUT GOOD
CAUSE CONNECTED WITH SUCH WORK OR WAS DISCHARGED
FOR MISCONDUCT CONNECTED WITH THE WORK.
-
-
-

DH



DEFENDANT'S
EXHIBIT
7

Bailey v. Miltope Corporation
M#00116

# INSTRUCTIONS FOR UNEMPLOYMENT COMPENSATION HEARING

### PLEASE BE PROMPT

**FAILURE TO APPEAR:** IF EITHER PARTY FAILS TO APPEAR THE ADMINISTRATIVE HEARING OFFICER MAY HEAR THE TESTIMONY OF THE PARTY APPEARING AND DECIDE THE CASE ON THE BASIS OF THIS TESTIMONY AND ANY OTHER EVIDENCE AVAILABLE. IF THE APPELLANT FAILS TO APPEAR THE ADMINISTRATIVE HEARING OFFICER MAY, WITHOUT RECEIVING FURTHER EVIDENCE, ISSUE A DEFAULT DECISION AFFIRMING THE DETERMINATION FROM WHICH THE APPEAL WAS TAKEN. IF YOU ARE NOT ON TIME FOR THE HEARING YOU MAY LOSE YOUR OPPORTUNITY TO TESTIFY OR PRESENT ANY EVIDENCE.

**REPRESENTATION:** YOU MAY APPEAR AT THE HEARING WITHOUT REPRESENTATION. THE ADMINISTRATIVE HEARING OFFICER WILL ASSIST ALL PARTIES IN DEVELOPING THE FACTS IN THE CASE. HOWEVER, YOU MAY BE REPRESENTED BY AN ATTORNEY OR OTHER REPRESENTATIVE.

**WITNESSES:** IF YOU HAVE ANY WITNESSES WHOM YOU WISH TO TESTIFY AT THE HEARING, YOU MUST NOTIFY THEM OF THE TIME AND PLACE OF THE HEARING AND ARRANGE FOR THEM TO BE PRESENT. YOU MAY REQUEST THE ISSUANCE OF SUBPOENAS COMPELLING THE ATTENDANCE OF WITNESSES, THE PRODUCTION OF BOOKS, PAPERS, AND TANGIBLE THINGS WHICH CONSTITUTE OR CONTAIN MATTERS WITHIN THE SCOPE OF THE EXAMINATION. REQUESTS FOR THE ISSUANCE OF SUBPOENAS SHOULD BE MADE TO THE ADMINISTRATIVE HEARING OFFICER AT THE BEGINNING OF THE HEARING. WITNESSES SHOULD HAVE ACTUAL, DIRECT, PERSONAL KNOWLEDGE OF THE FACTS RELATING TO THE CASE.

**EVIDENCE:** IT IS IMPORTANT THAT YOU BE IN A POSITION TO OFFER ALL OF YOUR EVIDENCE IN CONNECTION WITH THIS CASE AT THE HEARING. IN CASES INVOLVING HEALTH, A DOCTORS CERTIFICATE MAY BE REQUIRED.

**AFFIDAVITS:** AFFIDAVITS MAY NOT BE AS PERSUASIVE AS ORAL TESTIMONY. IT IS BETTER FOR YOU AND YOUR WITNESSES TO APPEAR AT THE HEARING TO PRESENT FACTS TO THE ADMINISTRATIVE HEARING OFFICER. IF YOU, OR A WITNESS, ARE UNABLE TO ATTEND THE HEARING BECAUSE OF THE DISTANCE TO THE PLACE OF THE HEARING, OR FOR SOME OTHER REASON, AN AFFIDAVIT MAY BE SUBMITTED. THE AFFIDAVIT SHOULD SET FORTH ALL FACTS, PREFERABLY IN CHRONOLOGICAL ORDER. PLEASE GIVE DATES, PLACES AND NAMES. AFFIDAVITS MUST BE RECEIVED BY THE ADMINISTRATIVE HEARING OFFICER PRIOR TO THE HEARING. NOTE: THE ADMINISTRATIVE HEARING OFFICER WILL NOT ACCEPT TESTIMONY OR DISCUSS THE FACTS OF THE CASE BY TELEPHONE.

**ADDITIONAL INFORMATION:** IF YOU HAVE ANY QUESTIONS ABOUT THE HEARING, YOU MAY CONTACT THE LOCAL UNEMPLOYMENT COMPENSATION OFFICE OR THE HEARINGS AND APPEALS DIVISION IN MONTGOMERY AT 334-242-8475.

**POSTPONEMENT:** THE HEARING WILL NOT BE POSTPONED EXCEPT FOR GOOD CAUSE. REQUESTS FOR POSTPONEMENT SHOULD BE MADE WELL IN ADVANCE OF THE HEARING BY CONTACTING THE HEARINGS AND APPEALS DIVISION IN MONTGOMERY.

**INTERPRETERS:** IF YOU REQUIRE THE SERVICES OF AN INTERPRETER, PLEASE NOTIFY THE HEARINGS AND APPEALS DIVISION AS SOON AS POSSIBLE.

**SPECIAL ACCOMMODATIONS:** IF YOU HAVE PHYSICAL RESTRICTIONS OR REQUIRE SPECIAL ACCOMODATIONS OF ANY KIND TO PARTICIPATE IN THIS HEARING, PLEASE CALL 1-800-321-9323 UPON RECEIPT OF THIS HEARING NOTICE.

FORM DIR-8
(REV. 9-03)

STATE OF ALABAMA
DEPARTMENT OF INDUSTRIAL RELATIONS
UNEMPLOYMENT COMPENSATION AGENCY
MONTGOMERY, ALABAMA 36131

# EMPLOYER NOTICE OF DETERMINATION

MILTOPE CORPORATION
C/O PAYROLL DEPT
500 RICHARDSON RD S
HOPE HULL AL 36043-4022

| | | |
|---|---|---|
| 1. CLAIMANT'S NAME | : BAILEY/PATRICK A | |
| 2. SOCIAL SECURITY NO. | : | EMPLOYER NO. 2018400600 |
| 3. OFFICE COUNTY | : 6001 | |
| 4. EFFECTIVE DATE | : 11-16-03 | |
| 5. BASE PERIOD BEGINS | : 07-01-02 | |
| 6. BENEFIT YEAR BEGINS | : 11-16-03 | |
| 7. WEEKLY BENEFIT AMOUNT | : $210.00 | |
| 8. MAXIMUM BENEFIT AMOUNT | : $3780.00 | |
| 9. TYPE CLAIM | : N | |
| 10. DATE THIS NOTICE MAILED | : 12-08-03 | |
| 11. MAIL CODE | : 9 | |
| 12. CONTACT LINE | : 334-242-8620 | (NOT TOLL FREE) |

Refer to item #9. If this is a TEUC claim, no charges will be made
to the Alabama employers for payments under this federal program.

A DETERMINATION HAS BEEN MADE ON THIS CLAIM HOLDING THE
CLAIMANT DISQUALIFIED FOR RECEIPT OF BENEFITS UNDER THE
SECTION AND FOR THE PERIOD INDICATED BELOW:

SECTION OF LAW: 25-4-78(2)

BEGINNING: 11-16-03          ENDING: INDEFINITE
SEE BACK OF THIS NOTICE FOR EXPLANATIONS OF MOST FREQUENT DISQUALIFICATIONS.

APPEAL RIGHTS - THIS DETERMINATION BECOMES FINAL, UNLESS AN APPEAL
IS RECEIVED BY THIS AGENCY WITHIN 15 CALENDAR DAYS
IMMEDIATELY FOLLOWING THE DATE ENTERED IN ITEM 10.
ABOVE. APPEALS SHOULD BE ADDRESSED TO:

ALABAMA DEPARTMENT OF INDUSTRIAL RELATIONS
HEARINGS AND APPEALS DIVISION
649 MONROE STREET
MONTGOMERY ALABAMA 36131-7301

OR FAX TO: 334-242-2084

NOTE: THIS NOTICE IS FOR YOUR RECORDS. IF YOU WRITE REGARDING THIS
NOTICE, SHOW CLAIMANT'S SOCIAL SECURITY NUMBER.

Bailey v. Miltope Corporation
M#00118

# STATE OF ALABAMA
## DEPARTMENT OF INDUSTRIAL RELATIONS
### HEARINGS AND APPEALS DIVISION
#### MONTGOMERY, ALABAMA  36130



## DECISION ON UNEMPLOYMENT COMPENSATION CLAIM

**CLAIMANT**

PATRICK A BAILEY

ALEXANDER CITY AL 35011-1805

**EMPLOYER**

MILTOPE CORPORATION
C/O PAYROLL DEPT
500 RICHARDSON RD S
HOPE HULL AL 36043-4022

**APPELLANT** : CLAIMANT
**LOCATION** : ALEX CITY
**OC NO.** : 00-05

**DATE MAILED** : 2/11/04
**CASE NO.** : 18357-AT-03
**S. S. NO.** :
**HEARING DATE** : 2/3/04

**APPEARANCES AT THE HEARING:** Claimant with attorney and employer written statement

**ISSUE(S):** Voluntarily leaving most recent bona fide work without good cause connected with such work. Section 25-4-78(2) Code of Alabama 1975

**FINDINGS:** The claimant appealed an Examiner's determination imposing a disqualification and denying benefits under Section 25-4-78(2) of the Unemployment Compensation Law. The determination was based upon a finding that the claimant left most recent bona fide work with this employer voluntarily and without good cause connected with work.

The claimant worked for the listed employer from February 12, 2001, until November 11, 2003, as a government property administrator. The claimant was considered to have abandoned his job after being absent for more than three consecutive working days without proper notice to or permission from the employer. The claimant last worked on November 3, 2003. He was out on November 4, 2003, with his daughter who was sick. He did notify the employer at that time. The claimant was out again on November 5, 2003, due to his father's illness. The claimant did notify the employer that he was not going to be at work on that date. The claimant had requested a family medical leave of absence related to his father's illness in October 2003, but left the paperwork on his desk and asked his supervisor to turn in the paperwork. However, the claimant did not provide the required medical documentation with the paperwork to justify the request for a family medical leave of absence. That medical documentation was not provided by the claimant until November 13, 2003, the day after the employer sent the claimant a letter of separation, noting that the claimant was considered to have abandoned his job because he had been absent from November 6, 2003, through November 11, 2003, without notice to or permission from the employer. The claimant was never advised his request for a family medical leave of absence had been approved because the medical documentation to justify the family medical leave of absence was not submitted until after the claimant was separated.

**CONCLUSIONS:** Section 25-4-78(2) of the Law required a disqualification if an individual voluntarily leaves his most recent bona fide work without good cause connected with such work. "Good cause" is defined as substantial reason; just ground for such action; adequate excuse that will bear the test of reason; and always the element of good faith. The good cause reason must be work

Bailey v. Miltope Corporation
M#00121

connected. The Alabama Department of Industrial Relations Administrative Code defines job abandonment in Rule 480-4-3-.16 as follows: "If an employee is absent from work without notice, unless it is shown that notice is not reasonably practicable, to his or her employer for a period of three consecutive regularly scheduled working days, and is terminated because of such absence, the employee shall be determined to have abandoned his employment. A determination of job abandonment shall be subject to a disqualification for unemployment benefits under Code of Alabama 1975, Section 25-4-78(2), voluntarily quit work." The evidence presented in this case reflects the claimant was absent from scheduled work for more than three consecutive working days without proper notice to or permission from the employer. Although the claimant had completed paperwork to request a family medical leave of absence, he did not provide the required medical documentation to justify the awarding of a family medical leave of absence until after his termination had occurred. Under these circumstances, the claimant is subject to a disqualification under the provisions of Section 25-4-78(2) of the Law.

**DECISION:** The Examiner's determination is affirmed. The claimant remains disqualified under the provisions of Section 25-4-78(2) of the Unemployment Compensation Law. This disqualification remains in effect until the claimant reenters insured or other acceptable employment as specified in the Law, earns wages in such employment of not less than ten times the weekly benefit amount, and is separated from such employment under nondisqualifying conditions. The maximum amount of benefits to which the claimant may later become entitled is reduced in accordance with the Examiner's determination. The employer's experience rating account is relieved of charges for this period of employment.

**APPEAL RIGHTS:** This decision becomes final unless an application for leave to appeal to the Board of Appeals is received in writing at the Department address above or by fax at 334-242-2084 on or before the **FINAL DATE OF February 26, 2004.**

*Janie W. Wade*

Janie W. Wade
Administrative Hearing Officer

JWW/dk

c: Derrick Blythe, Attorney
Alexander City, AL 35010

Bailey v. Miltope Corporation
M#00122

**Pat Bailey**

| | |
|---|---|
| **From:** | Pat Bailey [streetdrummer@webshoppe.net] |
| **Sent:** | Wednesday, November 05, 2003 8:29 AM |
| **To:** | Brian "William" Burkhead |
| **Cc:** | griesco@miltope.com |
| **Subject:** | update |

I called in both Monday and Tuesday. Asked you to return the call both times. Still no response from you. What are you trying to say? Hopefully, it is different than what I am hearing.

Today we are waiting for the nurse to come by and will probably be getting x-rays done to monitor the growth of the tumor. She said Monday his air capacity in the tumorous lung is very low and this would be a sign of growth of the tumor or fluid build-up. Neither situation is a good one.
I have requested a letter from the doctor detailing my father's condition to satisfy the approval of leave. I will forward it to your attention when I receive it.

(256)496-2660 cell
(256)825-8839 home



**3** | **MONDAY**    Worked / Syd went to school
Marlborough Anniversary (NZL)
Culture Day (JPN)

---
---
---
---

**4** | **TUESDAY**    Called in Syd Sick
6476
Shelly    6471    6472
Tangi    Darlene
Election Day (USA)
Melbourne Cup Day (AUS)    Nikki lesson 6pm.    camp
Josh @ 7:30    camp

---
---
---

**5** | **WEDNESDAY**    Called in left msg.
Guy Fawkes Day (GBR) (N IRL)    Nikki
Told Brian where (the leave request
(filled out already) was in my cube.
He told me I needed a letter
from Dr.    Called Dr. Laws office
requested letter

**6** | **THURSDAY**    Took Dad to Dr.
6469
Spoke to Lee Butler on
phone regarding order # 5071 three
time. Called Med Mel Our to
get CAW link sent to my House
She did. Called Lee to tell him.

**2003 NOVEMBER**

DEFENDANT'S
EXHIBIT
9
PENGAD 800-631-6989

**FRIDAY 7**

Worked with lee on phone
Talked to Brian Goff 6487

**SATURDAY 8**

Atlanta — McQueen Street Load In

**SUNDAY 9**

○ Full Moon    Atlanta — McQueen Street Rehearsal

| OCTOBER | | | | | | |
|---|---|---|---|---|---|---|
| M | T | W | T | F | S | S |
| | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| NOVEMBER | | | | | | |
|---|---|---|---|---|---|---|
| M | T | W | T | F | S | S |
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

| DECEMBER | | | | | | |
|---|---|---|---|---|---|---|
| M | T | W | T | F | S | S |
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

**NOVEMBER 2003**

**10** MONDAY  Atlanta McQueen Street Rehearsal

**11** TUESDAY  C.

Remembrance Day [CAN] [AUS] [NZL] [GBR] [N IRL]
Veterans' Day [USA]
Armistice Day

NIKKI  6

Jost pmt. due 7:30

**12** WEDNESDAY  Libby from Faith Hospice
got call from Dr. Office that
letter was ready. She was
going to pick it up. Syd & I
went by to get it any way, Libb
had already gotten it.

**13** THURSDAY  Libby gave me the letter
from Dr. laws Office. I took it back
to have them fax it.

2003 NOVEMBER

and
Sent e-mail to Brian Burkhead          **FRIDAY** | **14**
Gabe Riesco and Ed Crowell to          Canterbury Anniversary (NC NZL)
confirm receipt of the e-mail.

pm Got the termination letter in the mail.
along with COBRA info.

No reply          **SATURDAY** | **15**

No reply          **SUNDAY** | **16**

**OCTOBER**
| M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

**NOVEMBER**
| M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

**DECEMBER**
| M | T | W | T | F | S | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

NOVEMBER 2003

## 17 MONDAY No reply

J. Reeves called. @ 8:40

Libby came down @ 10:15

Last Quarter Moon

## 18 TUESDAY sent e-mail to G. Riesos

no reply

## 19 WEDNESDAY

Talked to Tina

B'ham

Sig pac. on Stick It

## 20 THURSDAY

**2003** NOVEMBER

**MILTOPE**
CORPORATION

November 12, 2003

Mr. Patrick Bailey

Jackson's Gap, AL 36861

Dear Patrick:

This letter will serve to notify you that your employment at Miltope has been terminated effective November 11, 2003. As stated in our policy "absence/tardiness" in the employee handbook, if you are absent for three consecutive workdays without providing acceptable notice, you may be considered to have "resigned without notice" and removed from the payroll. Your actions meet this requirement of having voluntarily resigned.

Please contact me at (334) 613-6542 to make arrangements to return the company's laptop and any other Miltope property in your possession.

Sincerely,

Edward F. Crowell
Vice President – Administration

DEFENDANT'S
EXHIBIT
_D_
PENGAD 800-631-6989

Bailey v. Miltope Corporation
M#00054

3800 Richardson Road South • Hope Hull, AL 36043 • Telephone: 334-284-8665 • Fax: 334-613-6591