**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **PATRICK BAILEY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 2:05-cv-1061-MEF-TFM |
| ) | |
| **MILTOPE CORPORATION,** ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT MILTOPE CORPORATION'S BENCH BRIEF**

**I.    INTRODUCTION**

As Miltope Corporation ("Miltope") understands the evidence that will be presented in the trial of this matter, Patrick Bailey ("Bailey") cannot establish an interference claim under the Family and Medical Leave Act ("FMLA") because he was not entitled to either leave or restoration, the two rights guaranteed by the FMLA.  See 29 U.S.C. §§ 2612(a)(1), 2614(a)(1).  Bailey was not entitled to leave because his father did not require the plaintiff's care as a result of a serious health condition.  Moreover, Miltope could not have violated any right to restoration because, even after the twelve weeks of FMLA leave would have expired, Bailey would have been unable or unwilling to return to work.  Accordingly, Miltope expects that it will be entitled to a judgment as a matter of law in its favor as to Bailey's interference claims at the conclusion of the plaintiff's evidence.

## II. FACTS

This case arises from Bailey's attempt to take a leave of absence to care for his father, whom he believed had terminal cancer. (Plaintiff's Depo. p. 82, ll. 21-22; 151, ll. 6-11) Actually, Bailey's father did not have terminal cancer, a fact that should have been crystal clear on November 6, 2003, the first day on which the plaintiff missed work and failed to call in to report his absence. (Plaintiff's Depo., pp. 103, ll. 1-3; 104, ll. 13-21, Ex. 3 at SR#00576.) The medical documentation reflects that no malignancy was detected in the left lung and that the right lung had recovered from the pneumonia experienced in the summer of 2003. (Id.)

Despite being told that his father's health had improved, Bailey again missed work without calling in on November 7 and November 10, 2003. (Crowell Decl., ¶¶ 4, 6.) He was deemed to have voluntarily quit after failing to call in for three consecutive days while absent from work. (Id.)

Even assuming that Bailey believed that he did not have to report his absences, the letter his father's doctor wrote does not entitle Bailey to leave under the FMLA. The letter allegedly faxed to Miltope to certify Bailey's entitlement to FMLA leave states merely that the father's illness "may require his son's assistance." (Plaintiff's Depo., Ex. 11.) The letter does not support the conclusion that Bailey was needed to provide care for his father. That Bailey's "assistance"

"may" be "require[d]" is entirely different from being needed to provide care as contemplated by the FMLA. See 29 C.F.R. § 825.116 (a) & (b).

Bailey admitted that his father could care for his own basic medical, hygienic, and nutritional needs while Bailey worked. For example, his father could use the microwave to prepare his own meals and could administer his own pills if the plaintiff first put them in a pill box. (Plaintiff's Depo. p. 154, ll. 13-21; 155, ll. 6-18.) Bailey's father received hospice care, but as a part of that care, Bailey was encouraged to allow his father to provide for his own needs as long as possible. (Plaintiff's Depo. p. 91, ll.21-23; 92, ll. 1-9; p. 154, ll. 21-23; 155, ll. 1-2.)

Most significantly, Bailey admitted that he would not now return to Miltope because of his desire to care for his father, who is still living, and his daughter. (Plaintiff's Depo. pp. 71, ll. 12-17; 80, ll. 3-23; 81, ll. 1-20.) He stated that he would not want to return to any "9 to 5" job. (Id.) Accordingly, Bailey would not have returned to Miltope even if he had been granted a leave of absence. As a result, Miltope, as described in the argument below, will likely be entitled to judgment as a matter of law at the conclusion of the plaintiff's case.

## III. ARGUMENT

### A. THE PLAINTIFF WAS NOT 'NEEDED TO CARE FOR' A FAMILY MEMBER'S 'SERIOUS HEALTH CONDITION'

The plaintiff's stated reason for wanting to take a leave from work was to care for his father during a time the plaintiff believed that his father was suffering

3

from terminal cancer. (Plaintiff's Depo. pp. 82, ll. 21-22; 83, ll. 2-4, 17-20; 151, ll. 6-11; 180, ll. 15-23; 181, l. 1.) This reason does not qualify under the FMLA. The statute entitles an employee to take up to twelve weeks of unpaid leave "in order to care for [a parent] of the employee, if such [parent] has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA, however, does not provide leave for every family emergency. The reason for the leave must fall under the statute and accompanying regulations. The regulations define "needed to care for" as

> encompass[ing] both physical and psychological care. It includes situations where, for example, because of a serious health condition, the family member is unable to care for his or her own basic medical, hygienic, or nutritional needs or safety, or is unable to transport himself or herself to the doctor, etc. The term also includes providing psychological comfort and reassurance which would be beneficial to a child, spouse or parent with a serious health condition who is receiving inpatient or home care.
>
> The term also includes situations where the employee may be needed to fill in for others who are caring for the family member, or to make arrangements for changes in care, such as transfer to a nursing home.

29 C.F.R. § 825.116 (a) & (b).

Bailey cannot show that he was "needed to care for" his father and, therefore, cannot show that he was entitled to leave under the FMLA. See Overley v. Covenant Transp., Inc., 178 Fed. Appx. 488, 494-95 (6th Cir. 2006) (unpublished). In Overly, the plaintiff's daughter was severely disabled from a childhood injury and lived in an assisted-living facility. Id. at 490. On the day for which the plaintiff claimed FMLA leave, the plaintiff's activities included visiting

4

her daughter at the assisted-living facility and picking up the daughter's laundry. Id. at 490. The court affirmed summary judgment, holding that picking up the daughter's laundry was a routine matter that did not qualify as "physical or psychological care." Id. at 494-95. The same principle applies here: Bailey's actions in pre-arranging easily microwavable meals or pre-sorting pills into a pill box do not qualify as "care."

Neither did Overley's visiting her daughter in the assisted-living facility constitute care. Id. at 494-95. Similarly, in Fioto v. Manhattan Woods Enters. LLC, 123 Fed. Appx. 26, 28 (2d Cir. 2005) (unpublished), the court affirmed a grant of judgment as a matter of law where the plaintiff failed to establish he was "needed to care for" his sick mother. In that case, the plaintiff's "trial testimony established only that he missed work in order to visit his mother at the hospital while she was admitted there for cancer surgery." Id. There was no testimony that the plaintiff intended to "provide her with psychological or physical care, nor did he testify to providing his mother with actual care during his hospital visit." Id. As with Overley visiting her daughter in an assisted-living facility and Fioto visiting his mother in the hospital, Bailey could not have been "needed to care for" his father while his father was under the care of skilled hospice employees.

To the extent the plaintiff was needed to transport his father to doctor appointments, such a need would have required only intermittent leave, and would

5

not have relieved the plaintiff of his obligation to call in or apprise his employer of when he would be at work.  See, e.g., Lewis v. Holsum of Fort Wayne, Inc., 278 F.3d 706, 709-710 (7th Cir. 2002) (holding that employee could be fired for failing to follow customary call-in policy while taking FMLA leave because she offered no explanation why she could not have called in to report her absences).

Moreover, the doctor's letter that the plaintiff claims to have submitted to substantiate his need for medical leave does not state that his presence was necessary to care for his father.  (Plaintiff's Depo., Ex. 11.)  The letter merely states that the plaintiff's father's illness "may require his son's assistance."  (Id.)  As noted earlier, Bailey's father was under the care of hospice and could prepare his own meals and take his own pills.  There is no evidence in the record that Bailey's time with his father had some psychological benefit for his father.  In fact, the person receiving the psychological benefit was the plaintiff who testified that he could not be away from his father in what he thought were his final days after missing his mother's final days. (Plaintiff's Depo. p. 83, ll. 14-23; 84, ll. 1-13.)

### B.  THE PLAINTIFF'S CLAIM FAILS BECAUSE HE COULD NOT HAVE RETURNED TO WORK WITHIN 12 WEEKS AND HE DID NOT MITIGATE HIS DAMAGES

Even if the plaintiff could establish that he was needed to care for his father because of his serious health condition, the plaintiff's admission that he would not return to work at Miltope or any "9:00 to 5:00" job undermines his claim.

6

(Plaintiff's Depo. pp. 71, ll. 12-17; 80, ll. 3-23; 81, ll. 1-20.)  In <u>Ragsdale v. Wolverine World Wide, Inc.</u>, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002), the U.S. Supreme Court held that the "[FMLA] provides no relief unless the employee has been prejudiced by the violation . . . ."  The damages available to the plaintiff under the FMLA are "[a]ny wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation." 29 U.S.C. § 2617(a)(1)(A).  Here, the plaintiff cannot show he is entitled to any relief because he was not prejudiced.

For example, the Sixth Circuit has specifically addressed this issue by holding that where the plaintiff was clearly unable to return to work within the period provided by the FMLA, the plaintiff had no interference claim.  See <u>Edgar v. JAC Products, Inc.</u>, 443 F.3d 501, (6th Cir. 2006); <u>Williams v. Toyota Motor Mfg., Ky.</u>, 224 F.3d 840, 845 (6th Cir. 2000) <u>rev'd on other grounds</u>, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002); <u>Cehrs v. Northeast Ohio Alzheimer's Research Ctr.</u>, 155 F.3d 775, 785 (6th Cir. 1998).  In <u>Williams</u>, the court held that "[e]ven if [the plaintiff] was wrongfully terminated . . . within the 12-week period covered by the FMLA," her failure to demonstrate that she would have ever returned to work was fatal to her interference claim. <u>Williams</u>, 224 F.3d at 845.

The Williams court thus determined that because the plaintiff would not have returned to work within 12 weeks, she "suffered no damages" and, accordingly, the employer was entitled to summary judgment even if it had "improperly denied [the plaintiff] FMLA leave." Id. at 844. The same result is warranted here where the plaintiff admitted that he would not have returned to Miltope within the twelve weeks of leave permitted by the FMLA.

That Miltope did not know that Bailey would not return within 12 weeks when it decided to terminate him does not save the plaintiff's claim. The Supreme Court has held, under the ADEA, that after-acquired evidence may be used to decide the appropriate remedy. McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 359-361 (1995). That principle has been applied to the FMLA context. In Edgar, the Sixth Circuit held that an employer may defeat an FMLA interference claim based on information that the plaintiff would have been unable to return to work even if that information was acquired after the decision to terminate. Edgar, 443 F.3d at 512-14. Such a holding was justified in the interference context because, "rather than inquiring into the employer's motive at the time of the decision, the court is charged with resolving the *objective* question of whether the employee was capable of resuming his or her duties within the FMLA-leave period." Id. (emphasis added). Accordingly, that Bailey is unwilling to resume his "9:00 to 5:00" duties defeats his interference claim.

The plaintiff's admission that he would not return to work at Miltope or any "9:00 to 5:00" job also demonstrates his failure to mitigate damages. See Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 231 (1982) (claimant has a duty to mitigate damages that requires him "to use reasonable diligence in finding other suitable employment"). The plaintiff has not sought "9:00 to 5:00" employment because his current schedule of working two days per week in a band accommodates his desire to be home for his father, who is still living, and daughter. (Plaintiff's Depo. pp. 71, ll. 12-17; 80, ll. 3-23; 81, ll. 1-20.) Where the plaintiff has failed to seek replacement employment, his damages are limited by that failure to mitigate. See Voyles v. Louisville Transportation Company, 136 Fed. Appx. 836, 838-39 (6th Cir. 2005) (affirming jury's verdict limiting back pay damages under the FMLA by excluding any time when the plaintiff failed to interview for employment because such failure "indicat[ed] a refusal to seek other employment for a definite amount of time."); McDonnell v. Miller Oil Co., 1997 U.S. App. LEXIS 6266, *6-7 (4th Cir. 1997) (unpublished) (affirming district court's award of $1.00 in nominal damages for plaintiff's failure to mitigate). In McDonnell, the plaintiff was not rehired after maternity leave. Id. at *3. Although the jury found in her favor on the issue of liability, the jury awarded her no damages because she failed to read want ads, to apply for jobs, or to contact employment agencies, or otherwise to discharge her mitigation duty. Id. at *4. The plaintiff appealed, but the circuit

9

court affirmed, holding that there was evidence on the record to justify the jury's conclusion that there was no mitigation. Id. at *6.

The plaintiff's actions since his termination, far from mitigating his damages, represent a personal choice to abandon his profession and pursue an alternative career as a drummer. See Williams v. Imperial Eastman Acquisition Corp., 994 F. Supp. 926, 931-32 (N.D. Ill. 1998) (Plaintiff's decision to give up on the search and return to his hometown to run the family cattle farm entailed a personal choice to start an alternative career, rather than a serious attempt to mitigate damages."). Here, Bailey has never sought employment other than working two days a week in his band and tutoring a couple of music students. (Plaintiff's Depo. pp. 45, ll. 19-23; 46, ll. 1-10.) Like the plaintiffs in Voyles and McDonnell, Bailey's backpay damages are limited to the time when he met his duty to mitigate. Bailey, like McDonnell, failed utterly in that duty. Accordingly, the plaintiff has no claim for backpay.[1]

The plaintiff also has no claim for liquidated damages. Because the statute that authorizes such damages defines them as twice the amount of any compensatory damages, see 29 U.S.C. § 2617(a)(1)(A)(iii), and the plaintiff has no

---

[1] At the very least, the plaintiff's backpay claim should be limited to the 12 week FMLA period. See Rogers v. AC Humko Corp., 56 F. Supp. 2d 972, 976-78 (W.D. Tenn. 1999) (limiting backpay damages to the "pay [p]laintiff would have received during his twelve weeks of FMLA leave" because the defendant would have terminated the plaintiff after the leave period expired and he was unable to return to work.).

10

compensatory damages, he therefore has no claim for meaningful liquidated damages. See McDonnell v. Miller Oil Co., 1997 U.S. App. LEXIS 6266, *4-5 (4th Cir. 1997) (unpublished) (affirming the district court's doubling the plaintiff's $1.00 nominal compensatory damages to $2.00 for liquidated damages); Rogers v. AC Humko Corp., 56 F. Supp. 2d 972, 978 (W.D. Tenn. 1999) ("since Plaintiff is not entitled to any backpay, it is not appropriate to award prejudgment interest or liquidated damages").

## IV. CONCLUSION

Bailey chose to stay home with his father though that care was not needed. Furthermore, Bailey would not have returned to work within 12 weeks from the time he began taking time off to be with his father. Based on this evidence, which we believe will be presented at trial, the defendant will be entitled to judgment as a matter of law.

Respectfully submitted,

s/ Heather F. Lindsay
Heather F. Lindsay (ASB-0629-D64H)

s/ Justin A. Barkley
Justin A. Barkley (ASB-3855-S76B)

Attorneys for Defendant
Miltope Corporation

**OF COUNSEL:**

**Johnston Barton Proctor & Rose LLP**
2900 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 458-9400
Fax:  (205) 458-9500
E-Mail:  hfl@johnstonbarton.com
           jab@johnstonbarton.com

## **CERTIFICATE OF SERVICE**

  I hereby certify that on January 22, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Derrick Blythe, Esq.
126 Marshall Street
Alexander City, Alabama 35010

I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None

          *s/ Justin A. Barkley*
          Heather F. Lindsay (ASB-0629-D64H)
          Johnston Barton Proctor & Rose LLP
          2900 AmSouth/Harbert Plaza
          1901 Sixth Avenue North
          Birmingham, Alabama 35203
          Telephone: (205) 458-9400
          Fax: (205) 458-9500
          E-Mail: jab@johnstonbarton.com
          One of the Attorneys for Defendant
          Miltope Corporation